UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-25-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & PRELIMINARY |
| TIMOTHY DENNIS GOWDER, | ) | FORFEITURE ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In February 2019, a jury unanimously convicted Dr. Timothy Gowder of conspiring to

unlawfully distribute pain pills and engaging in two transactions funded by dirty money. *See* DE

403 (Jury Verdict). The Government proved that Defendant was the lead prescriber at, and reaped

handsome profits from, a "pill mill" in Hixson, Tennessee—namely Tennessee Pain Institute (or,

in the trial's parlance, TPI). Defendant Gowder waived his right to a jury determination regarding

forfeiture. Accordingly, the Court set a briefing schedule. DE 402 (Minute Entry). Based on the §

846 and § 1957 convictions, and pursuant to the linked § 853[1] and § 982[2] forfeiture provisions, the

---

[1] The statute, in relevant part, mandates that individuals convicted of certain felonies, including §
846, forfeit:

> (1) any property constituting, or derived from, any proceeds the person obtained, directly
> or indirectly, as the result of such violation;
> (2) any of the person's property used, or intended to be used, in any manner or part, to
> commit, or to facilitate the commission of, such violation;

21 U.S.C. § 853(a).

[2] In relevant part, the provision provides: "The court, in imposing sentence on a person convicted
of an offense in violation of section [ ] 1957 . . . shall order that the person forfeit to the United
States any property, real or personal, involved in such offense, or any property traceable to such
property."

Government now seeks a preliminary order of forfeiture as to $240,391.80 previously seized from

Gowder's Bank of America Account ending in x0898. *See* DE 415 (Gov. Memo on Forfeiture);

DE 416-1 (Proposed Preliminary Forfeiture Order).

Rule 32.2 sets the mechanics:

> A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.
> . . . .
> As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.
> . . . .
> The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

Fed. R. Crim. P. 32.2. As to notice, the superseding indictment's forfeiture allegation fully satisfied

the 32.2(a) requirement. *See* DE 46 (Superseding Indictment) at 18 ("Funds on deposit in the Bank

of America account number 003781790898 in the name of Timothy D. Gowder and Linda S.

Gowder."). Neither party requests a hearing. Thus, the Court, seeing no relevance or reliability

concerns with Gowder's fresh submissions, DE 416-1 & DE 416-2, will resolve forfeiture

propriety on the paper record. *See* Fed. R. Civ. P. 32.2(b)(1)(B). The parties fully briefed the

matter.

The Court must decide whether, on the full record, the Government has preponderantly

proven that the $240,391.80 in the target account has a "sufficient nexus or substantial connection

to [either] underlying offense." *United States v. Evers*, 669 F.3d 645, 660 (6th Cir. 2012) (citations

and quotation marks omitted); *see United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007) (Government faces a preponderance burden). Gowder concedes forfeitability as to the $30,054 in transactions undergirding his § 1957 convictions. DE 418 (Gowder Forfeiture Memo) at 6; *see* DE 46 at 8. The Government pegs its forfeiture theory for the remaining funds to the illicit prescribing conviction. *See* DE 415 at 3. Thus, the narrower question presented is whether the Government satisfactorily proved that the disputed account portion constitutes, or is "derived from, any proceeds [Gowder] obtained, directly or indirectly, as the result of" the § 846 conspiracy. 21 U.S.C. § 853(a)(1).[3]

Trial exhibits, created by IRS SA Danielle Barto and corroborated by her detailed testimony, showed that Gowder received nearly $1,000,000 in distributions from TPI. *See* Gov. Exs. 83A (Summary Chart – TPI Intake); 84A & 84K (HCM Account Deposits); 83E (Summary Chart – Distributions); 86A & 87A (Gowder Distributions). [Thus, there is no *Honeycutt* problem here. *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 (2017) (Forfeiture "is limited to property the defendant himself actually acquired as the result of the crime.").] The financial records showed $250,000 in electronic transfers from Gowder's x1864 account to the seized account. Gov. Ex. 87A. These transfers occurred between June 15, 2012, and August 19, 2013. Gov. Ex. 87A. Through the final x1864–x0898 transfer date, Gowder funded the transferor account with 100 TPIP checks totaling $411,037.43. *See* Gov. Ex. 86A. As the Government concedes, however, prior to the first $50,000 transfer Gowder deposited only $24,955 in TPI-linked funds in the x1864 account. *See* DE 415 at 3 n.1; Gov. Ex. 86A. Thus, the Government is unable to link $25,005 of the first $50,000 shifted from x1864 to x0898 to the conspiracy. TPIP deposits in the x1864

---

[3] Though the Government, in boiler-plate, recites the § 853(a) "used, or intended to be used" in committing or facilitating subsection (2) option, the argument presented is clearly a subsection (1) theory. The United States did not develop a use or facilitation argument.

account exceeded the transfer figures for the subsequent $200,000 in transfers to x0898. *See* Gov. Exs. 86A & 87A. In sum, the Government's proof draws a direct line from the conspiracy to $224,955 via the TPIP-x1864-x0898 transfer chain.

Adding, to this figure, the (proven) $28,672.63 in TPIP checks Gowder deposited directly into the x0898 account, results in a $253,627.63 total for funds traced from TPI receipts to the x0898 account. Stated otherwise, trial proof showed that Gowder, well after his 2011 TPI start date and squarely within the convicted conspiracy period, transferred proceeds "obtained . . . as a result of" the conspiracy, and exceeding the forfeiture figure sought, into the target account. *See* Gov. Ex. 75 (Gowder TN Bd. Hrg. Tr.) at 1059–60; DE 46 at 1 (charging a January 2009 to August 2, 2017, conspiracy).

Gowder resists forfeiture on two grounds. First, Gowder notes that the jury acquitted him of Counts 5 and 7-10. DE 418 at 3. He claims the acquittals show that the jury specifically found that the TPI proceeds related to such counts were not conspiracy proceeds. *Id.* Thus, per Gowder, only the Count 11 and 12-tied transactions provide a proper forfeiture basis. *Id.* This argument, citing no supportive caselaw and seemingly asking the Court to ignore the Count 1 conspiracy conviction, is unpersuasive.

At best, any attempt to extrapolate affirmative juror findings, made in the black box of the jury room, from the bare fact of an acquittal presents a precarious thought experiment. An acquittal is, by its nature, a negative finding with little susceptibility to positive counter inferences.[4] Particularly so when, as here, the underlying charges carry numerous essential elements and

---

[4] That is, a *not* guilty finding directly conveys that the jury was not convinced that the Government proved every essential offense element beyond a reasonable doubt. An acquittal truly lends itself, definitively, to only one affirmative inference: the jury had a reasonable doubt as to at least one element of that particular charge.

provide a host of potential paths to the ultimate result. Certainly, as to the acquitted counts, the jury might have found that the at-issue transactions did not "involve the proceeds of [a] drug-trafficking offense[,]" as Gowder contends. *See, e.g.*, DE 400 (Jury Instructions) at 20 (Instruction #15). Of course, the jury might instead have found that Gowder did not know that the property involved was illicit proceeds, or that Gowder had no intent to promote or conceal, or (for Count 5) that Gowder did not voluntarily join his Co-Defendants' laundering scheme. *Id.* In other words, the acquittals suggest little,[5] and say nothing conclusively, about the jury's view regarding the extent of criminal taint on TPI proceeds. Gowder passed on a jury determination for this issue, and he cannot now spin a tortured and self-serving interpretation of the jury's other findings into a shield against forfeiture liability.[6]

---

[5] If the Court were inclined to read the verdict tea leaves as Gowder suggests, the more logical inference would surely be that the jury found that Gowder lacked concealment or promotion mens rea as to the acquitted counts. After all, the jury convicted Gowder on two charges that required a finding of illicitly derived proceeds (Counts 11 & 12) and acquitted on only those counts including additional promotion or concealment elements (Counts 5 & 7–10). *See* DE 403. The Count 1 conviction blankets TPI operational life.

[6] Even if, hypothetically, the jury explicitly found that the Government had not adequately proven that certain TPI proceeds were criminally derived, that finding would not be determinative for the forfeiture analysis. Criminal forfeiture is "an element of the sentence imposed following conviction[,]" not a part of a substantive offense. *Libretti v. United States*, 116 S. Ct. 356, 363 (1995). Thus, the preponderance standard applies. *See Jones*, 502 F.3d at 391. Accordingly, the Government's theoretical inability to prove a forfeiture predicate under the heightened trial standard would not be decisive. The Court, based on the Count 1 conspiracy conviction and for forfeiture purposes, could still "consider uncharged and acquitted conduct that falls 'within the boundaries of the overall scheme.'" *United States v. $72,050.00 in U.S. Currency*, 587 F. App'x 241, 248 (6th Cir. 2014) (citations omitted); *see also United States v. Venturella*, 585 F.3d 1013, 1017 (7th Cir. 2009); *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016) (authorizing forfeiture for "executions of the scheme that were not specifically charged or on which the defendant was acquitted"); *United States v. Reed*, 908 F.3d 102, 125 (5th Cir. 2018) ("We have upheld forfeiture based on 'a comprehensive criminal conspiracy' taking place over more than six years, even where the statute of limitations for the offense was five years." (citation omitted)).

However, as detailed, the jury's actual verdict did not require a sub-finding that any TPI proceeds were untainted. Thus, the Court need not consider any "acquitted conduct" to decide the forfeiture issue here.

Gowder's second argument, that an April 14, 2017, deposit of $111,022.70 in the subject account was wholly sourced from non-conspiracy activity, fares better. *See* DE 418 at 4. Per the records, Gowder's made his last TPIP-traced deposit, a $9,543.63 cashier's check, in the subject account on September 2, 2016. *See* Gov. Ex. 87A at 2. More than six months later, Gowder deposited $111,022.70 in the x0898 account. *See* DE 418-2 (x0898 Deposits & Withdrawals). Gowder's forfeiture briefing tenders reliability corroborate his claim regarding this deposit's non-conspiracy source. *See* DE 418-1 (Land Sale Records).[7] This untainted subsequent deposit tips the preponderance scales in Gowder's favor as to $111,022.70 of the seized account balance. *See Honeycutt*, 137 S. Ct. at 1629 (Section 853(p) is "the sole provision of § 853 that permits the Government to confiscate property untainted by the crime."). The estate-based funds are not proceeds of Gowder's criminal activity.

Given the x0898 deposit timing, and on the full record, the Court finds that the Government has preponderantly proven forfeitability as to $129,369.10 of the x0898 account. Accordingly, and under Fed. R. Crim. P. 32.2(b)(2), the Court preliminarily **ORDERS** as follows:

1. Pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982, Defendant Timothy Gowder's interest in $129,369.10 seized from the Bank of America, Money Market Savings Account ending in x0898 (and identified in DE 416-1) is forfeited to the United States;

2. The Government **SHALL** provide notice to persons who may have an interest in the property listed above and is authorized to conduct appropriate discovery and any necessary ancillary proceedings as to the rights of third parties pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c);

---

[7] The land sale records indicate a net sale payment of $222,045.40 to Defendant Gowder and his sister. *See id.* at 17. Gowder's 50% share matches, to the cent, the $111,022.70 deposit.

3.  The United States Marshals Service **SHALL** seize forthwith the property described above and maintain custody in accordance with 21 U.S.C. § 853 and all relevant laws pending further Court orders; and

4.  The Clerk is **DIRECTED** to deliver copies of this Order to the United States Marshals Service and United States Probation Office.

This the 28th day of May, 2019.

Signed By:

_Robert E. Wier_

United States District Judge