UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:17-CR-25-REW |
| ) | |
| v. ) | |
| ) | OPINION & ORDER |
| TIMOTHY DENNIS GOWDER, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Dr. Gowder,[1] through counsel and pursuant to 18 U.S.C. § 3582(c)(1)(A), moves for compassionate release. DE 652 (Motion); *see* DE 653-1 (Mem. in Support). The statute requires an inmate seeking compassionate release either to "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or to wait "30 days from the receipt of such a request by the warden" before filing a motion with the Court. 18 U.S.C. § 3582(c)(1)(A). Here, Dr. Gowder waited more than thirty days from the Warden's denial of his administrative request—*see* DE 653-4 (Quintana Resp. dated 6/22/20)—to file his motion. *See* DE 652 (filed 7/31/20). Because Defendant satisfied the pre-filing statutory requirement, the Court set a schedule for briefing on the merits. *See* DE 656. The motion—now fully briefed, *see* DE 658 (Response), 659 (Reply)—stands ripe for review.

**I.  BACKGROUND**

In February 2019, after a trial spanning two fortnights, a jury unanimously convicted Defendant Gowder (as well as co-Defendants Anwar Mithavayani and Pete Tyndale) of conspiring

---

[1] A current FMC Lexington inmate.

1

to unlawfully distribute pain pills and twice engaging in transactions funded by more than $10,000 of dirty money. *See* DE 403 (Jury Verdict). In August 2019, the Court sentenced Gowder to a 252-month total term of imprisonment for his participation in the trafficking conspiracy and illicit transactional crimes. DE 524 (Judgment). During a presentence interview, Gowder (age 73) gave USPO the following report regarding his physical condition:

> Gowder informs he is in poor health, advising that he suffers from prostate and heart issues. Gowder reports he underwent a total knee replacement at Methodist Medical Center (Oak Ridge, Tennessee) on October 20, 2004, during which time he was required to have blood transfusions. Gowder states that, after one such transfusion, he developed acute cardiomyopathy from the coxsackievirus, a blood borne pathogen. Gowder informs that, in response, he had to undergo a heart transplant at St. Thomas West Hospital (Nashville, Tennessee) in 2016 and 14 subsequent biopsies through the neck to determine if there is rejection of the implanted organ. Gowder's wife added that the defendant's condition resulted in medical officials determining that he was terminal in October 2016, but was afterward notified that officials found a matching heart, which saved his life. Gowder's wife related that the defendant also underwent the implantation of two pacemakers. Gowder indicates that he has conferred with cardiologist Dr. Don Chomsky (Nashville, Tennessee) as necessary.

DE 523 (PIR) ¶ 71. Probation confirmed Gowder's reports via records from his family physician. *Id.* In the pending motion, Defendant adds a claim that his "medical records reflect a decline in his cognitive ability during the years his heart failure progressed." DE 652 ¶ 21. Gowder does not claim he has been **diagnosed** with any cognitive defect. Instead, Defendant relies on:

(1) An episode, reported June 11, 2015, in which Gowder experienced shortness of breath, "obvious pain across his upper abdominal area[,]" hyperventilation, and an enlarged abdomen around 4:00 a.m. one morning while "he was at the beach[.]" *Id.* ¶ 21. Per the report, that evening, Gowder "got up again, he was restless, he was dozing then, jerking awake—he was disoriented when he awakened but reoriented to person and place[.]" *Id.* Gowder reported stating that he "want[ed] to 'sign documents' and 'talking out of his head.'" *Id.* After eventually falling asleep at 9:00 a.m. the next morning, Gowder "slept for 7 hours" and awakened "reoriented[,]" but "did not remember any of the night's events." *Id.*

(2) A January 26, 2016, score of 25/30 on a Montreal Cognitive Assessment. *Id.* ¶ 22. Per Gowder, "any score higher than 25 [is] considered normal. Any score of 25 or less is

    considered to be an indication of some form of cognitive impairment, which can predict or identify the onset of dementia[.]" *Id.*

(3) A March 20, 2017, medical-record note stating: "Noncompliance (ICD10-CM Z91.19). Course: Progressing as expected. This is unintentional. P[atient] may have some problems w[ith] memory but has had several issues w[ith] confusion about immunosuppression." *Id.* ¶ 23.

(4) Finally, Gowder cites medical studies "linking heart failure to cognitive impairment." *Id.* ¶ 25.

Defendant's memorandum relates claims regarding the dangers of COVID-19 in the prison setting and details Gowder's overwhelmingly positive history and laudable reputation prior to the crimes that landed him in prison. *See generally* DE 653-1. Defendant's theory is two-fold. First, Gowder claims he faces a high risk of contracting COVID-19 in the prison environment, that his health issues create risk factors that would exacerbate such an illness, and that these circumstances present extraordinary and compelling reasons warranting a compassionate release. *See, e.g.*, DE 653-1 at 2 ("Mr. Gowder has a 25% chance of dying and a 79% chance of suffering damage to his transplanted heart if he contracts COVID-19"). Second, Gowder contends that his alleged cognitive decline presents an independent extraordinary and compelling reason justifying § 3582(c) relief and asserts that the purported mental deterioration presents a release-favorable factor under § 3553(a). The matter is briefed. *See* DE 658 (Response); DE 659 (Reply); *see also* DE 660 (Status Report).

## II.   JURISDICTION

First and foremost, the Court presently lacks jurisdiction to decide this motion. Though no party has raised a jurisdictional issue, the Court undoubtedly has an omnipresent "duty to consider [its] . . . jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) ("Courts have an independent obligation to

3

determine whether subject-matter jurisdiction exists, even when no party challenges it."). Gowder timely filed an appeal notice on August 9, 2019. *See* DE 528. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 103 S. Ct. 400, 402 (1982). Before the Circuit, Gowder challenges his convictions (*i.e.*, the foundational bases for his sentence) and expressly contends that his sentence was procedurally unreasonable. *See United States v. Timothy Gowder*, Case No. 19-5894 (6th Cir.), at ECF No. 28 (Appellant Brief). The Court "lacks the power to order a sentence modification under 18 U.S.C. § 3582(c) while an appeal of that sentence is pending[.]" *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015) (finding "limited exceptions" to the "general rule" for "matters unrelated to the substance of the decision being appealed" inapplicable to a sentence reduction motion (quotation marks omitted)); *see United States v. Crawford*, No. CR16-5303RBL, 2020 WL 4791265, at *1 (W.D. Wash. Aug. 18, 2020) (finding that pending appeal deprived the court of jurisdiction for compassionate release request); *cf. United States v. Sanzo*, 831 F.2d 671, 672 (6th Cir. 1987) ("A district court has no jurisdiction to rule upon a Rule 35(b) motion after a notice of appeal has been filed.").[2]

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

---

[2] In adopting Appellate Rule 12.1, which provides mechanics for handling a motion "made in the district court for relief that it lacks authority to grant because of an appeal that has been docketed and is pending," the advisory committee anticipated that the rule would "be used primarily if not exclusively for[,]" among others, "motions under 18 U.S.C. § 3582(c)." Fed. R. App. P. 12.1 & Advisory Committee Notes; *accord* Fed. R. Crim. P. 37 & Advisory Committee Notes.

Fed. R. Crim. P. 37(a). The third option, a so-called "indicative ruling," is the most that Gowder could possibly earn in the current case posture. *Maldonado-Rios*, 790 F.3d at 65 (calling this procedure "the one that district courts should follow in like cases[—those in which the trial court is inclined to grant relief—]in the future"). Thus, the Court turns to the briefing to determine whether such a ruling is warranted.

### III. EXTRAORDINARY & COMPELLING REASONS

Generally, a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). However, Congress has established certain narrow exceptions. One such exception provides:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A) (relevant portions included).[3] By separate statute, Congress explicitly directed the United States Sentencing Commission to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t); *see id.* at (a)(2) (directing promulgation of "policy statements regarding . . . the appropriate use of . . . (C) the sentence modification provisions set forth in . . . [§] 3582(c) of title 18"). To that end, the Commission issued a policy statement, USSG § 1B1.13, authorizing, in relevant part, a reduction if "[e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person

---

[3] This is a provision Congress recently broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018. *See* PL 115-391, 132 Stat 5194.

5

or to the community . . . ; and [t]he reduction is consistent with this policy statement." Per the Application Notes to § 1B1.13, extraordinary and compelling reasons exist if:

> (A) . . . (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[; or]
>
> > (ii) The defendant is . . . suffering from a serious physical or medical condition, . . . functional or cognitive impairment, or [] experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . . .[4]
>
> (D) As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [previously] described[.]

Gowder, "trying to earn release and change the status quo, properly has the burden on the propriety of release." *United States v. Karr*, No. 6:17-CR-25-REW, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020); *see United States v. Israel*, No. 05 CR 1039 (CM), 2019 WL 6702522, at *9 (S.D.N.Y. Dec. 9, 2019); *Cannon v. United States*, No. CR 11-048-CG-M, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("And a defendant, as the § 3582(c)(2) movant, bears the burden[.]").

Here, the parties agree that Gowder presents extraordinary and compelling reasons. But, one problem: Neither side persuasively slots that conclusion into the statutory (and, by express cross-reference, USSG) framework. Defendant's argument facially depends on this Court

---

[4] The Court declines substantive discussion of plainly inapplicable options premised on proportion of sentence service, *see id.* at App. Note 1(B) (requiring, *inter alia*, a defendant that "has served" the lesser of "10 years or 75 percent of his or her term of imprisonment"), or family circumstances—*see id.* at App. Note 1(c) (triggered by "death or incapacitation of" a defendant's spouse, registered partner, or the caregiver of a defendant's minor child).

following other district courts that have determined that USSG § 1B1.13 is not, in its current form, a "policy statement applicable to motions for compassionate release filed by defendants under the First Step Act." *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *see* DE 653-1 at 5–11. However, Congress passed the FSA with § 1B1.13 (and § 994) as a backdrop. *See Karr*, 2020 WL 774363, at *3 n.12. Thus, the Court logically references the extant version of the Policy Statement on compassionate release as an "applicable" policy statement. 18 U.S.C. § 3582(c)(1)(A).[5]

The Government "concedes that, only during and because of the COVID-19 pandemic, the Defendant's verified chronic conditions . . . constitute an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A) and the applicable policy statement in USSG § 1B1.13." DE 658 at 2. Thus, the United States rejects the Defendant's premise regarding applicability of § 1B1.13 but invites the Court to read a COVID-19 exception into § 3582 and the applicable policy statement. Given that the statute (and guidelines) were last amended before the pandemic, it is unsurprising that the governing provisions include no such carveout. As tempting as it might be for the Court to simplify the analysis and skirt the § 3582(c)(1)(A) inquiry (as the Government seems to have done here), the Court's sentence-reduction authority is statutorily circumscribed.

Defendant does not allege, and no evidence shows, that he currently suffers from a terminal illness or other irremediable condition that substantially diminishes his self-care ability. The **risk** that COVID poses for Gowder (and others) is no small matter. But that looming possibility does not render Gowder's unquestionably serious ailments terminal in the vernacular. Thus, Defendant presents no extraordinary and compelling reduction basis under Application Note 1(A). Given the

---

[5] Consequently, the Court perceives no need to substantively address Gowder's reliance on his purported cognitive decline for purposes of the "extraordinary and compelling" analysis. Defendant does not attempt to fit the claim into the § 1B1.13 rubric. *See* DE 653-1 at 32.

Warden's denial (and the lack of evidence of successful appeal), no record proof indicates that the Director of the BOP has determined that Defendant's case offers an alternative extraordinary and compelling circumstance under Application Note 1(D). Further, nothing in the applicable BOP Program Statement (PS) 5050.50, projects a Gowder-favorable determination on administrative appeal. The Bureau's programmatic guidance does not meaningfully expand the USSG-defined "extraordinary and compelling" scope. *See, e.g.*, *id.* § 3 (Reduction in sentence "consideration may be given to inmates who have been diagnosed with a terminal, incurable disease" or "inmates who have an incurable, progressive illness . . . if the inmate is . . . [c]ompletely disabled" or "[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."). Section 3582(c)(1)(A) requires a predicate finding of consistency with § 1B1.13. Because Gowder fails to establish a triggering extraordinary and compelling predicate, the Court lacks power (as well as, again, jurisdiction) to reduce his sentence.

In the colloquial sense, the global pandemic surely presents extraordinary and compelling concerns for incarcerated individuals. However, neither this Court's unguided interpretation of "extraordinary" or "compelling" reasons, nor the protean nature of common parlance decides the case-critical question. "A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). And, Congress chose to vest the Sentencing Commission with the authority to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t). The legislature reinforced this lexicographic authorization by expressly predicating district court authority under § 3582(c)(1)(A) on a finding

that any reduction be consistent with the Commission's policy statements.[6] Gowder's motion hinges on the potentially dire (given preexisting conditions) consequences of an illness that Defendant has not yet contracted. A reduction based on risks associated with an eventuality that, in case circumstances, remains speculative[7] would not square with § 1B1.13. Finding the statutory requirements thus unsatisfied, the Court cannot grant and refuses the sought relief.

Additionally, even if Gowder had shown extraordinary and compelling reasons under § 1B1.13, the Court would deny the request. The Court has discretion to reduce a sentence where the triggering predicate exists, but still must analyze all applicable § 3553(a) factors and must determine that the defendant is not a danger (per § 3142(g)).[8] *Karr*, 2020 WL 774363, at *3; *see*

---

[6] Of course, if it so chooses, Congress may withdraw, circumscribe, or circumvent the authority it has vested in the Commission. Indeed, pending proposed legislation would explicitly deem the fact that a defendant is, "according to guidance from the Centers for Disease Control and Prevention, considered to be at a higher risk for severe illness from COVID-19, including because the defendant is 60 years of age or older or has an underlying medical condition," an "extraordinary and compelling reason under" § 3582(c)(1)(A)(i). 2019 Cong US S 4034 (June 22, 2020); *see also* 166 Cong. Rec. S4592-02, S4593 (July 29, 2020) (adding, as cosponsors, Senators Whitehouse, Wicker, Coons, and Tillis). Yet, the proposed legislation, for now, remains just that. It is the law on the books that binds this Court.

[7] If the Court accepts Gowder's reported figures, *see* DE 660 at 2, it appears that the infection rate for BOP inmates is under 10%. This is certainly no small figure, but neither is 6+ million nationwide infections. Whether released or incarcerated, Gowder will suffer from his chronic conditions and, if he contracts COVID-19, may face harrowing risks. Such static factors cannot, themselves, plausibly justify a sentence reduction. The Court certainly does not, here, affirmatively reject the premise that Gowder may be somewhat more likely to contract the coronavirus at FMC Lexington. [Though, as of this writing, BOP reports **one** active COVID-19 case at that facility. *See* COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited 9/11/2020).] Yet, it is a sad reality that Gowder would still, as all now do, face some risk if released. At bottom, the primary problem for Gowder's release case is that § 1B1.13 does not speak in terms of marginal risks solely attributable to imprisonment (and Gowder claims no current extraordinary and compelling condition). Until and unless that (or the statute) changes, the Court lacks authorization to grant the sought relief on the bases asserted.

[8] Given Gowder's age, conditions, lack of prior crime, and loss of prescribing authority, the Court does believe that it could fashion conditions that would reasonably ensure the safety of the community.

18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(B)(2). Per BOP's online Inmate Locator,[9] Gowder's projected release date is December 30, 2036. Defendant seeks an "immediate release to home confinement." *See* DE 652 ¶ 28. Thus, Gowder seeks an effective 16+-year (or, relative to the imposed term, roughly 77%) sentence reduction.[10] Notably, the Court **varied downward 228 months** from the floor of Gowder's 480-month guideline range at sentencing. The § 3553(a) factors counsel against additional leniency. To name a couple of examples: A jury convicted Gowder of **three** Class C felonies. As part of the federal trafficking conspiracy, Gowder was responsible for the introduction of more than 447,000[11] illicit oxycodone 30mg pills into Eastern Kentucky communities. Considering the full scope of relevant conduct, Gowder's offense level was, quite literally, off the charts. *See* DE 599 (Sentencing Tr.) at 70 ("The actual mathematical total's 46, but 43 is the maximum number").

The same reasons that supported the Court's initial judgment, here, justify adherence to that imposed term:

> Pursuant to § 3553(a), the sentence is minimally adequate to serve the statutory purposes, considering all factors required.
> Gowder's history and characteristics drive the variance here. The Court declined to depart, as a guidelines matter, based on the defendant's age, employment record, and physical characteristics, but considered these factors under the § 3553(a) rubric. Defendant was a law-abiding, indeed, exemplary member of

---

[9] *Available at* https://www.bop.gov/inmateloc/.

[10] As the Government points out, the request is even heftier if the Court calculates the implied reduction request by subtracting the time Gowder has actually served from the sentenced term. *See* DE 658 at 7.

[11] The actual total was significantly higher. *See* DE 599 at 46 ("[T]he minimum quantity that triggers the maximum guideline effect [corresponds to] 90,000 kilograms of converted drug weight[.]" Using the "oxycodone equivalency of one gram to 6,700 grams . . . ultimately means that 447,000 oxycodone 30s hits that threshold."); *id.* at 47 ("Dr. Moore['s prescriptions] should be included as a matter of relevant conduct [under] *Donadeo*[.]"); *id.* ("[T]he non-Kentucky patients are properly included if you look at the consistency of script writing."); *id.* at 51 (Even conservatively "dropping Dr. Moore out, looking at [only] Kentucky" patients, "Dr. Gowder is going to easily pass the threshold of the 90,000[.]"); *cf. id.* at 46 (TPI prescribed "1.6 million oxycodone" in total.").

> society for nearly five decades. The 94 character letters, reviewed in full, paint Gowder as leading a life worthy of admiration, prior to 2007. The overall blend and impact of Gowder's life is far outside the normal presenting record. Gowder has serious medical issues that will make his prison time much harder than average. Defendant is 72 years old and a recent heart-transplant recipient. A guideline sentence here, spanning four decades, is simply unnecessary to advance or comply with any § 3553(a)(2) purpose. The justifiably varied sentence remains, in all rational likelihood, a life sentence. Additional time would be paradigmatically "greater than necessary[.]"
>
> That said, no greater variance is warranted. Defendant's documented life of integrity, significant education, and past work as a legitimate healer should have rendered him immune to the lure of a profit-first, patients-second, consequences-last criminal enterprise at TPI. Instead, Gowder took to a dark path in 2011. He fully invested himself in TPI, ignored (or actually helped create) innumerable red flags, and declined to remove himself from the conspiracy, one that wrote well over 1.6 million oxycodone doses alone, until the Tennessee Board of Medical Licensure intervened. Even now, Gowder stands unwilling to show remorse or accept responsibility. The Court is confident that Dr. Gowder is finished with crime, and he thus presents low danger and recidivism risks. However, the sentence must adequately and broadly deter criminality, reflect crime gravity, and promote respect for the law. A grave crime demands a grave punishment. Defendant's role at TPI was the lynchpin for a far-reaching scheme that contributed heavily to the opioid napalming of Eastern Kentucky and other communities. Gowder was acquitted of the charged-death results enhancements, but the Court heard all the proof and heard directly, from many witnesses, of the harms emanating from the unwarranted oxycodone flow. Suffice it to say that the evidence linking the ghastly volume of TPI's opioid dispensing to detrimental, irrevocable harm suffered by numerous individuals was ample.
>
> The ultimate sentence, of undeniable weight and effect but far below a rote guidelines application, parsimoniously accounts for all statutory factors and purposes.

DE 533 at 5. The defense seeks a reweighing of or second look at all elements, but the Court finds its prior (yet recent) exercise fully on the mark. The Court took into account Dr. Gowder's entire story, in all of its variety and contradiction, when determining the final sentence. The same reasoning persists, and the requested relief would unjustifiably rebalance consideration of the sentencing purposes and factors in a manner inconsistent with § 3553(a).

Nor do Defendant's contentions concerning alleged cognitive impairment materially impact the analysis. Gowder offers exceedingly little proof that he is now or was, during the charge period, cognitively impaired. The only support specific to Gowder includes two-aged narratives from treatment notes and a borderline score on a purported *predictive* cognitive test. The general medical literature connecting heart issues to cognitive impairment only goes so far. Defendant's failure to present a **diagnosis** or any **current** evidence of cognitive decline is conspicuous. The Court conducted a lengthy trial in this matter and, at sentencing, heard at length from Dr. Gowder's wife. Not one iota of mental defect proof or argument appeared (before the instant motion). Put simply, the Court sees no evidence of cognitive deficiency sufficient to meaningfully impact Gowder's case for relief under the § 3553(a) factors. The impairment argument, moored on an archipelago of disconnected, temporally disparate, and indeterminate medical entries, has little support and even less persuasiveness. The Court observed Dr. Gowder for weeks, heard all of the proof at trial, and presided over a lengthy sentencing proceeding. That proceeding included careful consideration of the often restated 94 letters. Not once did any person or source suggest that Dr. Gowder engaged in crime because of confusion or mental compromise. Indeed, as the record conclusively supports, money, not delirium, fueled Dr. Gowder's pivotal role at TPI. The Court rejects the post hoc construct.

In sum, Defendant fails to establish a triggering "extraordinary and compelling" statutory predicate. Even if Gowder had cleared that hurdle, the § 3553(a)-factorial analysis would direct denial of the reduction request. Defendant's reported positive behavior during incarceration is encouraging, but that representation does not materially offset the weighty record proof regarding, *e.g.*, offense circumstances, crime gravity, and disrespect for the law. The requested reduction

would underserve critical § 3553 interests. An imprisonment sentence of only 18 months, Gowder's effective request, also would not, on this record and for this offense, be just punishment.

For these reasons, the Court **ORDERS** as follows:

1. The Court, seeing neither a substantial issue nor a basis for granting the motion if the matter were remanded, **DECLINES** an indicative ruling; and

2. The Court **DENIES** DE 652.

This the 16th day of September, 2020.

Signed By:
*Robert E. Wier*
United States District Judge